UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THOMAS SJOBERG,<br><br>Plaintiff,<br>v.<br><br>DEPUTY HAWLEY AND SHERIFF McNEIL,<br><br>Defendants. | Case No. 3:17-cv-00263-MMD-WGC<br><br>ORDER |

I. **SUMMARY**

Plaintiff Thomas Sjoberg, proceeding *pro se*, sues Defendants Sheriff Alvin McNeil and Deputy Wayne Hawley for denying him reasonable accommodations for his disability. Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge William G. Cobb (ECF No. 42) recommending that the Court grant Defendants' motion for summary judgment ("Motion") (ECF No. 23 (motion); ECF No. 30 (addendum)). The Court has reviewed Plaintiff's objection (ECF Nos. 45 (objection), 48 (exhibit)) as well as Defendants' response (ECF No. 46). For the following reasons, the Court declines to adopt the R&R and grants in part and denies in part Defendants' Motion.

II. **BACKGROUND**

    A. **Factual Background**

The following facts are undisputed unless otherwise indicated.

Defendant Hawley made contact with Plaintiff at the Wal-Mart in Fernley, Nevada on May 6, 2015 as part of an investigation into potential criminal activity. (ECF No. 23-1 at 2.) Defendant Hawley asked Plaintiff to accompany him to the substation of the Lyon County Sheriff's Office for an interview, and Plaintiff agreed. (*Id.*) Plaintiff participated in a video-recorded interview. (*Id.*; *see also* ECF No. 31-1.)

Plaintiff "was born with cerebral palsy and hearing loss in both ears." (ECF No. 5 at 3.) He wears two hearing aids, but both were broken at the time of his arrest. (*Id.*) At some points in the video-recorded interview, it seems that Plaintiff understood Defendant Hawley, while other times it seems he did not. For example, when Defendant Hawley suggested possible ways that medication could affect Plaintiff, Plaintiff did not appear to understand Defendant Hawley. Plaintiff offered a non-sequitur response and then said he was hard of hearing and was trying to understand what Defendant Hawley was saying. (ECF No. 31-1 at 18:12:35 to 18:13:20; ECF No. 37 at 6-7.)

Defendant Hawley eventually read Plaintiff *Miranda* warnings and arrested him. (ECF No. 23-1 at 2.) Plaintiff was transported to the Lyon County Jail and released to jail staff for booking. (*Id.*)

Plaintiff pleaded guilty to certain criminal charges but later filed a pre-sentence motion to withdraw his guilty pleas on the ground that his counsel was ineffective in failing to move to suppress statements Plaintiff made to Defendant Hawley. (*See id.* at 10-11.)[1] Plaintiff argued that he did not voluntarily, knowingly, and intelligently waive his rights because he has hearing difficulties and was not provided with a hearing device or interpreter to permit him to understand Defendant Hawley's questions and the advisement of his *Miranda* rights. (*Id.* at 11.)

The district court conducted an evidentiary hearing and concluded after reviewing the video-recorded interview that Plaintiff could hear and understand Defendant Hawley. (*Id.* at 12.) The Nevada Court of Appeals affirmed, finding that the record supported the district court's conclusion. (*Id.* at 13.)

### B. Report and Recommendation

Judge Cobb considered Plaintiff's claims in two ways. First, Judge Cobb considered Plaintiff's claims as they related to his detention at the Lyon County Jail. Judge Cobb found that Defendants were entitled to summary judgment in that regard because

///

---

[1] The Court takes judicial notice of the state-court documents Defendants filed. *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

1  Plaintiff did not identify what reasonable accommodation was necessary during his time
2  at the Lyon County Jail. (ECF No. 42 at 7-8.) Second, Judge Cobb considered Plaintiff's
3  claims as they related to the interview with Defendant Hawley. Judge Cobb found that
4  Defendants were entitled to summary judgment in that regard because a reasonable
5  accommodation during the interview was not necessary—the transcript and video showed
6  that Plaintiff understood Defendant Hawley. (*Id.* at 9.)

**III.   LEGAL STANDARD**

  **A.   Review of the Magistrate Judge's Recommendations**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *Id.* Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection."). Thus, if there is no objection to a magistrate judge's recommendation, then the court may accept the recommendation without review. *See, e.g.*, *Johnstone*, 263 F. Supp. 2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

///

///

## B. Summary Judgment Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence

of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

In light of Plaintiff's objection to the Magistrate Judge's R&R, this Court finds it appropriate to engage in a *de novo* review to determine whether to adopt Magistrate Judge Cobb's R&R. Upon reviewing the R&R and records in this case, the Court declines to adopt the R&R and grants in part and denies in part Defendants' motion for summary judgment.

Defendants argued that they are entitled to summary judgment because Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[2] (ECF No. 23 at 7.) Judge Cobb did not address this argument, instead considering the merits. Nevertheless, the Court agrees with Defendants to the extent that Plaintiff's claims arise from the alleged denial of a reasonable accommodation during the interview at the Fernley sub-station. For Plaintiff to succeed on this claim, he would have to show that "auxiliary aids and services" were "necessary" to afford him "an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b) (implementing regulation of Title II of the Americans with Disabilities Act ("ADA")). If Plaintiff established the requisite elements of this claim, he also would establish that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights during the interview. But as noted, the state district court found Plaintiff waived his *Miranda* rights in denying his motion to withdraw guilty plea. (ECF No. 23-1 at 12.) And it is immaterial that Plaintiff's claims arise under the ADA and the Rehabilitation Act ("RA") instead of 42 U.S.C. § 1983. *Bogovich v. Sandoval*, 189 F.3d 999, 1002 (9th Cir. 1999) ("There is no reason to believe that ADA claims should be treated any differently than § 1983 claims

---

[2]In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. at 486-87 (footnote omitted).

when examining whether a prisoner's case should have been brought under habeas corpus. Regardless of the type of claim asserted, the traditional purposes of habeas corpus must be preserved."). Accordingly, the Court will dismiss Plaintiff's claims as they relate to his interview at the Fernley substation because they are *Heck*-barred.

Plaintiff argues that *Heck* does not apply because Plaintiff's First Amended Complaint does not reference his conviction and because Plaintiff does not seek damages for an unconstitutional conviction or imprisonment. (ECF No. 29 at 3; ECF No. 45 at 2.) The Court finds this argument unpersuasive because Plaintiff's success on his ADA and RA claims related to the interview would necessarily imply the invalidity of his conviction by showing that he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights.

Defendants' *Heck* argument is unpersuasive with respect to Plaintiff's claims arising out of the alleged denial of a reasonable accommodation while he was in custody at the Lyon County Jail. These claims challenge the conditions—not the fact or duration—of his confinement. *See Bogovich*, 189 F.3d at 1002.

Defendants argue that they are entitled to summary judgment on the remainder of Plaintiff's claims because the evidence shows that Plaintiff could communicate effectively without any accommodation for his hearing loss. (ECF No. 23 at 12-13.) The Court finds the evidence equivocal. For example, when Defendant Hawley suggested possible ways that medication could affect Plaintiff, Plaintiff did not appear to understand Defendant Hawley. He offered a non-sequitur response and then said he was hard of hearing and was trying to understand what Defendant Hawley was saying. (ECF No. 31-1 at 18:12:35 to 18:13:20; ECF No. 37 at 6-7.) Plus, Plaintiff filed a grievance indicating that Deputy Bronk was "inconsiderate about [his] ability to hear correctly and understand fully." (*See* ECF No. 23-1 at 23.) In the grievance, Plaintiff detailed the ways his hearing disability affected him:

> Today at 0700 [Deputy Bronk] did not knock on window to m[ake] his presence known. I was already awake, I had gone to bathroom and then I opened my shower curtain. He opened my door and yelled at me to sit down what the hell . . . you want a 48 for that. I said no please, I did not hear you

> come in. He kept talking to me, but he was facing away from me, so I didn't hear what he was saying. I kept telling him I can't hear you and he got bent out of shape that he had to keep repeating himself. He then left for about 5 seconds and came back in and yelled to me next time you will receive a 48. This [is] not the first time I have had a problem with him there are several more incidents involving Deputy Bronk. He doesn't realize I can read lips and he has said very rude remarks towards me. All the other deput[ies] to my knowledge understand my abilities and limitations. Professionals including officers should remain mindful of my intellectual and functional limitations.

(*Id.*) In addition, Plaintiff notes that his hearing impairment "places [him] at added risk of assault and battery by others." (ECF No. 45 at 5.) A rational trier of fact drawing all inferences in favor of Plaintiff could conclude that some kind of hearing assistance was necessary for Plaintiff. Implementing regulations for Title II of the ADA provide that a public entity must "take appropriate steps to ensure that communications" with disabled persons "are as effective as communications with others."[3] 28 C.F.R. § 35.160(a).

Judge Cobb found that summary judgment was appropriate because Plaintiff failed to specifically identify the reasonable accommodation that he needed. In his objection, Plaintiff states that he "was not allowed to posses [his] own personally owned communication aids while [he] was in custody." (ECF No. 45 at 3.) Plaintiff also references his hearing aids in the FAC: "I wear two hearing aids, but both are [sic] broken at the time." (ECF No. 5 at 3.) Liberally construing Plaintiff's pleadings, it seems that Plaintiff has identified a specific reasonable accommodation that he needed—hearing aids.

Accordingly, the Court will dismiss Plaintiff's claims related to the alleged denial of a reasonable accommodation during his interview as *Heck*-barred and deny summary judgment on Plaintiff's claims as they relate to the alleged denial of a reasonable accommodation at the Lyon County Jail.

**V.  CONCLUSION**

It is therefore ordered that the Court declines to adopt Judge Cobb's Report and Recommendation (ECF No. 42).

---

[3]The ADA and RA are nearly identical and case law construing Title II of the ADA generally applies equally to claims arising under the RA. *See, e.g.*, *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001).

It is further ordered that Defendants' motion for summary judgment (ECF No. 23) is granted in part and denied in part. The Court dismisses Plaintiff's claims as they relate to the alleged denial of a reasonable accommodation during his interview under the *Heck* doctrine. The Court denies summary judgment on Plaintiff's claims as they relate to the alleged denial of a reasonable accommodation at the Lyon County Jail.

DATED THIS 20th day of September 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE